UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
Sylvester Gittens,                           :
                                             :
                Plaintiff,             :     **MEMORANDUM AND ORDER**
                                             :     04-CV-4386 (DLI)
              -against-                :
                                             :
Michael J. Astrue,[1]                        :
Commissioner of Social Security,             :
                                             :
                Defendant.             :
----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Sylvester Gittens filed applications for disability benefits under the Social Security Act (the "Act") on June 1, 1980 and on September 1, 1982. Both applications were denied on initial review, and plaintiff did not appeal either decision.[2] On June 27, 2000, after reopening plaintiff's 1982 application pursuant to the Second Circuit's Decision in *Dixon v. Shalala*, 54 F.3d 1019 (2d Cir. 1995), which required the reopening and readjudication of claims that were denied at any time between June 1, 1976 and July 19, 1983, the Social Security Administration affirmed the determination denying plaintiff benefits under the Act. Plaintiff challenged that decision in a hearing held before an Administrative Law Judge ("ALJ") on May 20, 2003. By decision dated December 16, 2003, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. On August 6, 2004, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review. Plaintiff filed the instant action to challenge the Commissioner's decision, pursuant to 42 U.S.C. § 405(g). The Commissioner now moves for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff cross-moves for judgment on the pleadings,

---
[1] Pursuant to Fed. R. Civ. P. 25(d), Michael J. Astrue shall be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this action.
[2] Neither of these decisions appears in the administrative record.

seeking reversal of the Commissioner's decision, or alternatively, remand. For the reasons set forth below, the Commissioner's motion is granted, and plaintiff's cross-motion is denied.

**I.     Background**

    A.   <u>Factual History</u>

Plaintiff was born on May 13, 1939, and attended school in his home country of Barbados, where he received the equivalent of a high school diploma. (Tr. 41.)[3] From 1969 to 1979, plaintiff held a job as a mechanic/maintenance worker in the United States, where he occasionally was required to lift heavy objects, ranging from 50 to 100 lbs. (*Id*. at 45, 48.) On April 16, 1979, plaintiff injured his back while lifting a pallet at work. (*Id*. at 42, 48.) Several months after the accident, plaintiff was admitted to Brooklyn Hospital, complaining of pain and numbness in both legs, especially on the right side. (*Id*. at 42, 304.) Plaintiff underwent conservative treatment, but his symptoms persisted. (*Id*. at 304.) A myelogram performed in September 1979 revealed a slipped disk on the left side of plaintiff's back. (*Id*. at 304.) On February 19, 1980, doctors at the Brooklyn Hospital operated on plaintiff, performing a lumbar laminectomy on plaintiff's L4 and L6 vertebrae, and removing herniated discs. (*Id*. at 299.) After the operation, plaintiff was prescribed Tylenol with codeine for his pain, and he remained at the hospital for one week, resting and receiving physiotherapy. (*Id*. at 305.) Medical reports indicate that plaintiff recovered very well from the operation, and that at the time of his discharge, he was able to walk unassisted. (*Id*.) After being discharged, plaintiff attended physical therapy sessions for a time, but at some point, he discontinued his treatment. (*Id*. at 26.)

Plaintiff received worker's compensation payments because of his injury; files from the Workers' Compensation Board contain reports of medical examinations conducted on plaintiff

---

[3] "Tr." citations are to the correspondingly numbered pages in the certified transcript of the administrative record filed with the Court as part of the Commissioner's answer.

after his back operation. (*See id.* at 206-07.) A medical examination report dated October 13, 1981, shows that plaintiff "had no limp," but that his "[f]lexion [was] markedly restricted," and that he could only raise his straightened right leg 15 degrees, and could only raise his straightened left leg 40 degrees. (*Id.* at 207.) The report also states that plaintiff's reflexes were "equal and active" and that there was no atrophy of either thigh. (*Id.*) Furthermore, the report notes that although plaintiff did not feel that his condition had improved since his injury, his doctor had suggested he might go back to light work. (*Id.*) A second medical examination report from the Worker's Compensation Board, dated September 20, 1982, indicates that plaintiff's condition had improved somewhat since 1981, but noted that his motions were still markedly restricted. (*Id.* at 206.) Specifically, the report notes that plaintiff "was unwilling to attempt bending over enough to touch his knees," and that his straightened left leg raising was restricted bilaterally, but that he could raise his straightened right leg 30 degrees. (*Id.*) The examiner also noted one inch atrophy of the thigh. (*Id.*) Plaintiff's reflexes again were marked as "equal and active." (*Id.*)

At a pre-hearing conference held before an attorney-advisor from the Social Security Administration on November 6, 2002, plaintiff testified about his back injury and the treatment he received for it. (*Id.* at 21-34.) Plaintiff also noted that he had suffered strokes since the year 2000, has been diagnosed as a diabetic for "a good few years," and that he has not had surgery since his 1980 laminectomy. (*Id.* at 27, 30.) At the close of the hearing, the attorney-advisor indicated that subpoenas would be issued for plaintiff's relevant medical evidence. (*Id.* at 33.) At the May 20, 2003 hearing in front of ALJ Lucian Vecchio, plaintiff testified that since the surgery, he occasionally experiences a sudden pain across his back, for which he takes Tylenol, rubs Ben-Gay on his back, and lies down. (*Id.* at 50-51.) Plaintiff also testified that he occasionally travels to Barbados, where he sometimes treats his back pain by going to a place

where he can soak in warm water. (*Id*. at 49-51.) Regarding his post-operation employment history, plaintiff testified that after his surgery, he applied for several desk jobs because he believed that he could work at a job that didn't require heavy lifting. (*Id*. at 45, 49.) He did not return to work, however, and instead stayed at home to take care of his daughter, and to do work around his house, including painting. (*Id*. at 49-50.)

  C. The ALJ's Decision

In a decision dated December 16, 2003, after obtaining plaintiff's relevant medical history and reviewing the claim *de novo*, the ALJ first determined that the only period at issue was from the onset date of plaintiff's injury, July 18, 1979, until plaintiff's last insured date, September 30, 1985.[4] (*Id*. at 11.) The ALJ further concluded that although plaintiff had a severe impairment, it was not *per se* disabling, and that even though plaintiff's impairment prevented him from performing his past relevant work during the period at issue, plaintiff retained the capacity to perform sedentary work that existed in the national economy. (*Id*. at 15-16.) Based on these conclusions, the ALJ determined that plaintiff was "not disabled" within the meaning of the Act. (*Id*.) The Appeals Council denied plaintiff's request for review on August 6, 2004, and this action followed. (*Id*. at 3-5)

**II. Discussion**

  A. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the

---

[4] Under 20 C.F.R. § 404.130(b), to have disability insured status, an individual must be "fully insured" as defined in 20 C.F.R. § 404.110, and be covered for 20 quarters of coverage in a 40-quarter period before the onset of disability. Plaintiff puts forward no evidence disputing the ALJ's determination regarding his insured status.

4

Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982) (internal quotations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike trial court judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (internal quotations omitted).

B.  Disability Claims

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months. *Id.* § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

The ALJ must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. § 404.1520. If at any step, the ALJ makes a finding that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a severe impairment, without reference to age, education, or work experience. To be considered disabled, the claimant must have an impairment, or combination of impairments, which significantly limits his or her physical or mental ability to do basic work activities, satisfying the durational requirement in § 404.1509. *See* 20 C.F.R § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed at 20 C.F.R., pt. 404, subpt. P, app. 1 (hereinafter "Appendix 1"). 20 C.F.R. § 404.1520(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's "residual functional capacity" in steps four and five. 20 C.F.R. § 404.1520(e). The

6

"residual functional capacity" is "the most [the claimant] can still do despite . . . limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ considers all of the claimant's impairments and symptoms, including pain, that may cause physical or mental limitations. *Id*. In the fourth step, the claimant is not disabled if he or she is able to perform "past relevant work." 20 C.F.R. § 404.1520(e). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work which exists in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work, *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642). The Commissioner ordinarily can satisfy this burden by demonstrating that the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2—which take into consideration an individual's residual functional capacity, age, education, and work history—require a finding of "not disabled." *Rosa*, 168 F.3d at 78 (citing *Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir. 1986)).

  C. <u>Substantial Evidence Supports the ALJ's Determination that Plaintiff's Impairment Does Not Meet or Equal a Listed Impairment</u>

The ALJ resolved step one in plaintiff's favor because plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 13.) At step two, the ALJ also found in plaintiff's favor, agreeing with plaintiff that his impairments were "severe" during the period at issue. (*Id*.) At step three, however, the ALJ found that plaintiff's "severe" medically determinable impairments did not "meet or equal" any of the impairments that are presumed to be disabling under the listings in Appendix 1, in particular section 1.00. (*Id*.) Where a plaintiff does not have a listed impairment, the pertinent regulations direct the ALJ to consider whether the plaintiff's impairment is equivalent to a listed impairment. 20 C.F.R. pt. 404, subpt. P, app. 1

§1.00(H)(4). In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

The type of listed impairment most similar to plaintiff's condition is a spinal disorder resulting in a compromised nerve root or spinal cord, accompanied by symptoms of either sensory or reflex loss, severe burning or painful dysesthesia resulting in a need for changes in position or posture more than once every 2 hours, or an inability to ambulate effectively. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04. The Appendix defines the inability to ambulate effectively as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id*. at § 1.00(B)(2)(b)(2). The Appendix further notes that individuals who meet these criteria generally "hav[e] insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id*.

The evidence shows that the plaintiff suffered from herniated discs, which required surgery. After the surgery, plaintiff's medical records indicate that his reflexes were equal and active, and that although some of his movements were significantly restricted, his flexibility had begun to improve within the first two years after the surgery. Additionally, there is no record of plaintiff's need to shift positions more than once every two hours, and plaintiff's travels to Barbados suggest that he could sit for several hours without experiencing discomfort. It also does not appear that plaintiff suffered from an inability to ambulate effectively as he testified that after his surgery, he spent most of his time taking care of his daughter and working on his house, occasionally painting. Based on plaintiff's medical records and his own testimony, the court finds

8

substantial evidentiary support for the ALJ's determination that plaintiff's impairment was not equal in severity to any of the listed impairments.

> D. Substantial Evidence Supports the ALJ's Decision That Plaintiff Retained Residual Functional Capacity To Perform Work In the Economy

The ALJ next found that during the disputed period, plaintiff retained the residual functional capacity to lift and carry up to ten pounds on occasion and up to five pounds frequently, to sit up to six hours a day, and to stand and walk for up to two hours a day. Additionally, the ALJ noted that plaintiff did not present any evidence of any non-exertional limitations. (Tr. 14.) Based on these findings, the ALJ determined at step four that plaintiff was unable to perform heavy, medium, or light work, and that therefore, he was unable to perform his past relevant work as a mechanic/maintenance employee, because that position required him to lift and carry heavy items. (*Id.*) The ALJ did conclude, however, that plaintiff remained capable of performing sedentary work, (*id.*), which is defined by the regulations as work that requires occasional standing and walking and "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," 29 C.F.R. § 404.1567(a); *see also Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). In reaching this conclusion, the ALJ determined that the plaintiff's statements regarding his inability to do any work were not entirely credible, "in light of the medical evidence, which has not identified a continuing medical disorder that would correspond in severity to the degree of limitations alleged, and considering the nature of the claimant's medical treatment, which has not been consistent with his allegations of severe and persistent pain." (Tr. 14.)

When faced with inconsistencies in the record between plaintiff's subjective claim of disabling pain and objective medical reports, the ALJ is entitled to rely on the reports and on his

own evaluation of plaintiff's credibility in determining whether plaintiff suffered such serious pain as to be disabled. *Rutherford v. Schweiker*, 685 F.2d 60, 63 (2d Cir. 1982). The evidence contains two reports of medical examinations the Worker's Compensation Board conducted during the relevant period, each approximately one year apart. The record does not show evidence of regular doctor's visits in connection with plaintiff's recurring pain that would support his allegations of disability. The evidence also shows that plaintiff did not receive regular medical treatment, and used over-the-counter medication such as Tylenol and Ben-Gay for the pain. In the 1981 medical report, the plaintiff claimed he did not feel that he could go back to work, but his doctor suggested he might have been able to go back to light work. The doctor's assessment is consistent with the evidence, as plaintiff testified that he did engage in some moderately taxing activity, such as painting his house, taking care of his daughter, and traveling to Barbados. Plaintiff also testified that, after his laminectomy, he actively sought desk jobs and believed himself capable of holding a job that didn't require heavy lifting. Accordingly, substantial evidence supports the ALJ's decision that plaintiff's allegations regarding his inability to work were not entirely credible, and that plaintiff maintained residual functional capacity to do sedentary work.

Based on plaintiff's residual functional capacity, along with his age during the disputed period, his education, and his vocational history, the ALJ determined at step five that the Medical-Vocational Guidelines required finding plaintiff "not disabled" because he remained capable of performing a full range of sedentary work which exists in the national economy. (*Id*. at 15.) Where the Guidelines fully describe an individual's physical limitations, they are dispositive. *Rosa*, 168 F.3d at 78. Rule 201.21 of the Guidelines directs a conclusion of "not disabled" where the person is a "younger individual," with a high school education or higher, capable of skilled or

semi-skilled work with transferable or non-transferable skills. 20 C.F.R. Pt. 404, subpt. P, app. 2 § 201.21. The ALJ determined that plaintiff met these criteria, and thus, was not disabled.

The term "younger individual" is used in the appendix to denote an individual age 18 through 49. *Id*. at § 200.00(h)(1). Plaintiff was 40 years old on the alleged onset date of July 18, 1979, and accordingly, he was a "younger individual" during the disputed period. Plaintiff also testified that he had received the equivalent of a high school education. Persons with a high school education or higher are considered capable of semi-skilled to skilled work. 20 C.F.R. 404.1564. Moreover, plaintiff's former responsibilities as a mechanic/maintenance employee also demonstrate his capacity to perform semi-skilled work, although the skills plaintiff exhibited in this position were not readily transferable to other types of work. *See* 20 C.F.R. 404.1568. Accordingly, during the disputed period, plaintiff was a younger individual, with a high school education, capable of semi-skilled work, who possessed non-transferable skills. The Guidelines require that such an individual be found not disabled. Substantial evidence thus supports the ALJ's determination that plaintiff was not disabled during the disputed period.

### III. Conclusion

For the reasons set forth above, the court finds that there is substantial evidence supporting the Commissioner's determination that the plaintiff was not disabled within the meaning of the Act during the relevant time period. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's cross-motion for judgment on the pleadings is denied.

SO ORDERED

DATED:   Brooklyn, New York
         August 16, 2008

_____/s/_____
DORA L. IRIZARRY
United States District Judge